## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **BRETT HUEFFMEIER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Case No.** |
| **v.** ) | |
| ) | |
| **TALENTUM EMPOWERMENT INSTITUTE,** ) | |
| **LLC f/k/a and d/b/a ABC EDUCATION** ) | |
| **GROUP, LLC d/b/a INTERNATIONAL** ) | |
| **EDUCATION ALLIANCE FOR LEARNING,** ) | |
| **d/b/a INTERNATIONAL EDUCATION** ) | |
| **INSTITUTE** ) | |
| ) | |
| **and** ) | |
| ) | |
| **KNOWLEDGELINK GROUP, INC.,** ) | |
| ) | |
| **and** ) | |
| ) | |
| **YI "BARBARA" LIANG,** ) | |
| ) | |
| **and** ) | |
| ) | |
| **VIVIAN NIEH,** ) | |
| ) | |
| **and** ) | |
| ) | |
| **SANDRA NIEH,** ) | |
| ) | |
| **and** ) | |
| ) | |
| **XINWEI "CHRISTINE" LIN,** ) | |
| ) | |
| **Defendants.** ) | |

## <u>VERIFIED COMPLAINT</u>

COMES NOW, Plaintiff Brett Hueffmeier, by and through his counsel of record Spencer

J. Webster of Webster Law, LLC, and for his claims against Defendants Talentum Empowerment

Institute, LLC f/k/a and d/b/a ABC Education Group, LLC d/b/a International Education Alliance

for Learning d/b/a International Education Institute, Knowledgelink Group, Inc., Yi "Barbara" Liang, Vivan Nieh, Sandra Nieh, and Xinwei "Christine" Lin, states as follows:

1.      Plaintiff Brett Hueffmeier is an individual and a Kansas resident, residing in Overland Park, Johnson County, Kansas.

2.      Defendant Talentum Empowerment Institute, LLC ("Defendant Talentum"), formerly known as ABC Education Group, LLC d/b/a ABC Education Group, LLC d/b/a International Education Alliance for Learning d/b/a International Education Institute, is a limited liability company, in good standing, registered in the State of Colorado. Defendant Talentum can be served through its Registered Agent, Pinnacle Solutions Consulting, LLC, located at 44 Cook Street, Suite 100, Denver, Colorado 80206.

3.      Defendant Knowledgelink Group, Inc. ("Defendant KL"), is a domestic profit corporation, in good standing, incorporated in the State of Massachusetts. Defendant KL can be served through its Registered Agent, Paula Cargill, 1601 Trapelo Road, Suite 240, Waltham, Massachusetts, 02451.

4.      Defendant Yi "Barbara" Liang ("Defendant Liang") is an individual, CEO of Talentum Empowerment Institute, LLC and Defendant International Educational Alliance for Learning, and a Massachusetts resident. Defendant Liang can be served at 16 Walsh, Road, Bedford, Massachusetts, 01730.

5.      Defendant Vivan Nieh ("Defendant Vivan") is an individual, upon information and belief the current Director of Operations at Talentum Empowerment Institute, LLC, and a resident of Vancouver, Canada.

6.      Defendant Sandra Nieh ("Defendant Sandra") is an individual, and upon information and belief, a resident of Vancouver, Canada.

7.     Defendant Xinwei "Christine" Lin ("Defendant Lin") is an individual, and upon information and belief, a resident of Boston, Massachusetts.

8.     Upon information and belief, at all times material to this action, each Defendant was the agent, partner, alter ego, subsidiary, and/or coconspirator of and with the other Defendant, and the acts of each were in the scope of that relationship. Upon information and belief, each Defendant knowingly and intentionally agreed with the other to carry out the acts alleged in this Verified Complaint ("Complaint"). Upon information and belief, in doing the acts and failing to act as alleged in this Complaint, each Defendant acted with the knowledge, permission, and consent of the other; and each Defendant aided and abetted the other.

## JURISDICTION AND VENUE

9.     This Court has jurisdiction over all causes of action alleged in this Complaint pursuant to 28 U.S.C. § 1332 because there is complete diversity between Plaintiff and each of the named Defendants, and because the amount in controversy exceeds $75,000.

10.     This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, which gives district courts jurisdiction over all civil actions arising under the Constitution, laws and treaties of the United States.

11.     This Court has supplement jurisdiction over the state law causes of action alleged in this Complaint pursuant to 28 U.S.C. § 1367 because these claims arise out of the same nucleus of operative facts as Plaintiff's federal law claims.

12.     This Court has personal jurisdiction over Defendants under the federal long-arm statute for all the reasons set forth above with respect to Kansas, and because the claims in this Complaint also arise from Defendants' actions purposefully directed at the United States, including

their unlawful targeting, trespassing, and invasion of Plaintiff's devices located in the United States, specifically, in Kansas.

13.     Defendants likewise purpose availed themselves of the United States's benefits by engaging in all the activities set forth above with respect to Kansas and the significant additional activities directed at the United States.

14.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b)(2), as the threatened and actual harm to Plaintiff was purposefully directed toward, and occurred in, this District.

## **FACTS**

15.     In June of 2018 Plaintiff took a job in China and began working for Defendant KL and continued working for Defendant KL for 2 years.

16.     Defendant KL partners with United States schools to provide international students opportunities at obtaining a United States education.

17.     Plaintiff worked his way up the company latter to become the number three person at Defendant KL obtaining the title of Regional Dean of Schools; Plaintiff was responsible for approving new products and overseeing all academic programs for its St. Mary's and John Carol campuses.

18.     Plaintiff's direct supervisor at Defendant KL was Defendant Liang.

19.     In or about June of 2020, Defendant Liang informed Plaintiff she was leaving Defendant KL to start her own company doing similar work as Defendant KL. Defendant Liang left Defendant KL in October of 2020, before she originally planned to leave.

20.    Defendant Liang offered Plaintiff the position of president at her new company, Defendant Talentum and ABC Education Group, and International Education Alliance for Learning, if Plaintiff was willing to leave the employ of Defendant KL.

21.    In or about January 2021, Plaintiff accepted the position and subsequently moved back to Kansas and began working for Defendant Talentum.

22.    Upon accepting the position of President at Defendant Talentum and moving back to Kansas, Defendant Liang and Plaintiff had agreed that he would receive approximately 20 percent ownership in Defendant Liang's companies and share in the profits of all divisions of Defendant Talentum and associated entities.

23.    Additionally, Defendant Liang offered to pay Plaintiff at the same salary level he was at when he left Defendant KL if Plaintiff preferred the salary rather than the ownership in Defendant Talentum.

24.    Four months after working for Defendant Liang, Plaintiff opted for the ownership interest in Talentum and Defendant Liang told Plaintiff that she would have a contract written up with the terms of their agreement.

25.    Upon his employ at Defendant Talentum, Plaintiff had an idea to create a United States college program in China and elsewhere.

26.    Initially, Defendant Liang was supportive as staff at Talentum and other experts believed Plaintiff's idea had great potential.

27.    Over time Defendant Liang changed her mind and began discouraging Plaintiff from developing his new business idea.

28.     Defendant Liang stated she wanted Plaintiff to exclusively focus on her core business model, which essentially duplicated the business model of Defendant KL, and claimed there was no market for Plaintiff's idea.

29.     While warning Plaintiff that his idea would likely be unsuccessful, she told him he was more than welcome to pursue it but under a new business of his own and on his own time, and that Defendant Talentum would not have any ownership interest in the new business.

30.     Plaintiff did pursue his idea under his own business and on his own time; further, he housed all his materials and documents on his own Microsoft Office 365 tenant, made the tenant private so that no one else could access the materials, did not allow guest access to the tenant, took steps to ensure the system was secure (including calling Microsoft multiple times), and communicated with employees at Defendant KL telling them that they were not to access his private tenant.

31.     During the six months Plaintiff worked at Defendant Talentum, he designed the academic programs, hired teachers (and paid them out of his own pocket), organized a full curriculum and heavily promoted the program as President of Defendant Talentum.

32.     Moreover, Plaintiff did this all without pay and was continuously asking about the contract Defendant Liang claimed was being drawn up regarding his ownership interest and profit-sharing agreement.

33.     In May of 2021, as Plaintiff had not been compensated whatsoever, he informed Defendant Liang that he would rather receive a salary than the ownership interest; Defendant Liang told Plaintiff that because of all his contributions, she wanted to pay him the salary and still give him the ownership interest—again claiming that a contract was in the works.

34.     In the weeks before Plaintiff left Defendant Talentum, Defendant Liang was still claiming that a contract for his ownership interest, profit share, and salary was being written up and that he would begin receiving compensation.

35.     Eventually, Defendant Liang informed Plaintiff that she did not believe Defendant Talentum would get any enrollment the following semester or year in the academic programs, thus not making a profit; and therefore, Plaintiff would not receive his salary, share in the profits nor an ownership interest.

36.     Instead of a salary and/or ownership interest, Defendant Liang offered Plaintiff $5,000 for months of high-level work, but in order to receive the $5,000 Plaintiff had to sign an agreement sharing ownership of his intellectual property with Defendant Liang as well as the profits from any "idea [Plaintiff] came up with while [Plaintiff] worked at ABC."

37.     Plaintiff rejected Defendant Liang's offer, retained an attorney, and prepared to file suit to protect his intellectual property that Defendant Liang and/or Defendant Talentum told Plaintiff would not be successful.

38.     Moreover, neither Defendant Liang nor Defendant Talentum assisted in the development or financing of Plaintiff's intellectual property.

39.     Just before moving forward with filing a lawsuit, Plaintiff decided it was best to move on and wanted to put the situation behind him; but Plaintiff's materials were still in the same Microsoft Office 365 ("Office 365") account with Defendant Talentum's materials.

40.     While there was only one Office 365 account, which Plaintiff had set up licenses for, managed, and paid for, during his employment at Defendant Talentum, there were two domains (also referred to as "tenants"): one domain for ABC and one domain for Eastwested (Plaintiff's new company Defendant Liang had told him to create to pursue his idea).

41.     Upon the agreement at the time of Plaintiff's separation from Defendant Talentum, Defendant Liang agreed and acknowledged that everything under the Eastwested domain and all the materials under that Office 365 domain belonged to Plaintiff.

42.     In June of 2021, before a separation of the domains could occur, Defendant Talentum removed Plaintiff as a global administrator and sent Plaintiff an email stating they intended to delete his domain and all the materials within the domain from the system.

43.     After Plaintiff spoke with his attorney, on June 2, 2021, Plaintiff responded by requesting they do anything to his materials and that they separate the domains.

44.     On July 2, 2021, Plaintiff unknowingly received an email containing Malware and forwarded that email to his attorney; upon investigation, Plaintiff later realized that he received similar emails containing Malware in June of 2020 and January of 2021.

45.     Both Plaintiff's systems along with his attorney's law firm's system were exposed to Malware.

46.     Plaintiff did not become aware of the presence of Malware infecting his computer and other devices until approximately September 22, 2021.

47.     In September of 2021, at Plaintiff's request, Defendant Talentum and Plaintiff agreed to separate the two tenants on the Office 365 account, meant to give each their own Office 365 account to house their individual tenant, and to keep their respective materials.

48.     Plaintiff had originally requested, and Defendant Talentum agreed, to have a third-party do the separation; however, Defendant Talentum proceeded with the separation on their own initiative without Plaintiff's consent or participation or verification that Plaintiff's intellectual property was not copied.

49.     From August 2021 to October 1, 2021, Plaintiff incorporated his company, East-West Education System, Inc., in the State of Kansas, created a brand, created brochures, made a website and engaged in other activities to further his business.

50.     Immediately, his program was getting a lot of attention, receiving over four million views and around 100,000 likes on Facebook within the first month Plaintiff launched, and upon information and belief, Plaintiff's website received over 200,000 visits. Moreover, Plaintiff's Facebook received over 11,000,00 views and reactions.

51.     On September 22, 2021, Plaintiff first noticed overt intrusions, identity theft, and intellectual property theft.

52.     When Plaintiff logged on to his Office 365 account, he realized that he did not have the authority of a global administrator, which did not make sense because he was the only individual with access to his account.

53.     Additionally, Plaintiff's Office 365 account had a profile for Defendant Sandra, who was Defendant Talentum's IT guru, and an employee of Defendant Liang for approximately 11 years.

54.     Eventually, it was clear that Plaintiff's Office 365 account was under complete control of Defendant Talentum.

55.     At this point, Plaintiff believed that Defendant Talentum had gained access and control through the Office 365 platform, not that Defendant Talentum had remote access to all of his devices.

56.     Plaintiff contacted Microsoft to inquire how Defendant Talentum still had access to his Office 365 account and to get assistance with removing such access.

57.     Microsoft suggested to Plaintiff that someone may have remote access to his devices.

58.     Further, Microsoft said they could see Defendant Sandra was currently accessing Plaintiff's Office 365 tenant from her known IP address, and Plaintiff could not delete her profile off his account.

59.     The Microsoft employee assured Plaintiff that it was Defendant Sandra accessing his Office 365 tenant because she was accessing it from the "same IP, in the same location, at the same time, and from the same computer" as Defendant Sandra had used for everything else Microsoft related over the previous year.

60.     Plaintiff then contacted Apple who informed him that the perpetrators had altered the directory and taken control of Plaintiff's profile on all his devices through his iCloud account.

61.     Further, Apple stated that it would be very difficult to remedy the issue with a full factory reset of all of Plaintiff's devices, which would likely result in the loss of most of Plaintiff's data.

62.     Moreover, though Plaintiff's account was not enrolled in any remote management software through Apple, the perpetrators had the power to change the options and appearances in programs and create artificial scenarios involving programs, data and websites.

63.     On or about September 28, 2021, Plaintiff had been working on a letter to send to his attorney so that his attorney could send a demand letter to Defendant Talentum.

64.     On or about September 28, 2021, Plaintiff, in an attempt to get the interference to stop, messaged Defendant Sandra informing her that he planned on taking legal action and that Defendant Talentum would be receiving a letter from his attorney soon.

65.     Soon after Plaintiff sent the message to Defendant Sandra, he witnessed the perpetrator drag the document into the recycle bin and delete the recycle bin from the screen of his computer; precluding Plaintiff from recovering the document; Plaintiff turned off his computer immediately.

66.     Plaintiff then tried to use his iPad Pro (which was also purchased a week prior) and within seconds the perpetrators were actively controlling the iPad; Plaintiff then shut off his iPad as well.

67.     After this occurred, Plaintiff contacted Alice Xing, a trusted friend and support at Defendant Talentum and, previously, at Defenant KL. Plaintiff informed Ms. Xing of what was occurring, and that Microsoft had identified Sandra as at least partially responsible for the intrusion and Ms. Xing exclaimed, "I told Barbara that I did not want to work for a company that does business this way." Additionally, she informed Plaintiff that because of her objection to Defendant Talentum's business practices, she was no longer in Defendant Liang's trust circle. She made clear to Plaintiff that she was aware that Defendant Liang had specifically asked Defendants Vivian and Defendant Sandra to illegally gain access to and take adverse actions against and within Plaintiff's electronic devices.

68.     As soon as Plaintiff ended the phone call with Ms. Xing, Plaintiff's computer was immediately attacked again, as he could see windows opening and closing quickly and settings being changed.

69.     As Plaintiff was watching his computer (which he purchased three weeks prior), along with a new iPad, go crazy with interference, Plaintiff sent a WeChat message to Defendant Vivian telling them he was getting ready to call the police; and as soon as Plaintiff picked up his

iPhone 12 ProMax to make the call to law enforcement, the phone powered off. Plaintiff then tried to make a call to law enforcement using his iPad, and that too powered off.

70.     Plaintiff was unable to get his devices back on for approximately 45 minutes even though both devices had full charge.

71.     The day after Plaintiff talked with Ms. Xing, Plaintiff sent an email to Defendant Talentum's leadership team, Defendant Liang, Defendant Sandra, and Defendant Vivian, stating that the interference needed to stop immediately and informed everyone that Microsoft had identified them as responsible for at least part of the interference.

72.     The following day Plaintiff received a response from support@abceducationgroup.com, which did not identify who was responding, stating that they were shocked at the accusations, implying that Plaintiff was crazy, and asserting that anything that was occurring was the result of an unrelated third-party hacking.

73.     Further, they claimed that any accusation against them was delusional.

74.     Oddly, the response from support@abceduationgroup.com copied the Washington University Alumni Association, Plaintiff's Alma Mater.

75.     The only time Plaintiff had ever sent an email to the Washington University Alumni Association was the day prior when he had responded to an invitation agreeing to serve on a recruitment and alumni outreach committee.

76.     Even more, Plaintiff responded to the Washington University Alumni Association from his personal Hotmail account and not his work account hosted on Office 365; therefore, the perpetrator had to have had accessed his computer to obtain the Washington University Alumni Association email address.

77.     In late October Plaintiff went to Apple and had all of his devices reset to factory settings, which should have kicked the perpetrator off of his devices.

78.     Immediately after Plaintiff logged on to his devices, the perpetrator was back on all his devices.

79.     A week later, Plaintiff again dropped of all of his devices at Apple for them to perform a factory reset on all the devices, but again, as soon as Plaintiff went through the steps to set up the devices, the perpetrator was back in.

80.     Plaintiff has attempted to regain control of his devices numerous times by contacting and working with Apple, Microsoft, Google, and Facebook; consulting with and hiring consultants; purchasing new products including computers, iPads and phones; creating new accounts and changing passwords; staying a hotels and attempting to work at different places; and attempting to work on other people's devices. Yet, to date, nothing has worked and Plaintiff's devices are still being interfered with.

81.     Plaintiff's mother's mobile devices and computers were also compromised, so Plaintiff's whereabouts could be tracked, thus allowing the perpetrators to have an idea of which WIFI network Plaintiff was using and allowing them to compromise his devices.

82.     Plaintiff lost control of his email accounts, Microsoft accounts, iCloud accounts, WhatsApp accounts, and Facebook accounts. Defendants took over these accounts and changed the two factor authentication methods to use number and emails that were already compromised so that Defendant would receive login verification messages when Plaintiff tried to log into this ccounts, making it impossible for Plaintiff to regain access to these accounts.

83.     Plaintiff's bank accounts, including his personal account and his East-West Education corporation account, were compromised. Even with nre accounts, Defendants have

compromised his new accounts no less than three times, causing Plaintiff to have to close and open new accounts on four separate occasions and for his bank to investigate the account for fraud. On each instance, the investigation concluded that Plaintiff's accounts had been fraudulently accessed and used to pay for various items. PayPal also contacted Plaintiff due to concerns regarding fraud which they notice on their own. Plaintiff's PayPal account had been used to fraudulently intitiate charges to his bank account. Plaintiff's PayPal account was also closed for fraud. This included the PayPal account used to engage in business transactions for East-West Education with oversees customers.

84.     When Plaintiff was advertising his business on Facebook, he set a daily spending limit of $30, but the perpetrators increased the limit to approximately $1,000 per day, costing Plaintiff around $8,000.

85.     Plaintiff's data, material and the work he had done in college, law school, and all previous professional work has all been destroyed.

86.     Plaintiff had more than 40,000 photos in his iCloud library which included photos he had taken during his travels to approximately 40 countries.  This entire library has been permanently deleted along with the backups he had made of the library on Google Albums.

87.     Plaintiff has lost all personal correspondence, personal and business contacts information, pictures, and everything else stored on his devices for the most part.

88.     The perpetrators have also interfered with Plaintiff's families' and friends' devices, causing Plaintiff to have to isolate himself out of fear they will continue to interfere in others' lives.

89.     The perpetrators have used Plaintiff's email, Facebook, and website domains to redirect inquiries regarding his business to Defendant Talentum and/or Defendant KL.

90.     To date, Plaintiff has lost around $80,000 including his contribution to Defendant Liang's business, his investment in his own business and his prevention and mitigation efforts regarding the interference.

91.     Upon information and belief, Defendant Talentum, Defendant KL, Defendant Liang, and Defendant Lin were/are working together to steal Plaintiff's intellectual property, execute his business plan and interfere with his relationships, including but not limited to:

a.  Defendant Talentum offering a 24-hour tutoring services;

b.  Defendant KL creating the same international university that Plaintiff had created on his on time while working at Defendant Talentum;

c.  Defendants interfering with his relationship with colleges, university, students and potential students;

d.  Defendant Talentum stealing Plaintiff's curriculum, consisting of two (2) terabytes of data;

e.  Defendant Talentum stealing and using benefits and materials from Plaintiff's Microsoft Office Education License, while simultaneously blocking access for Plaintiff to his Microsoft Office Education License; and

f.  Defendants stole Plaintiff's email domain, website domain, phone number and social media profiles, and would misinform potential students that Plaintiff no longer worked at Eastwested and direct the potential student to one of their businesses.

92.     Defendants have profited off the improper acquisition and use of Plaintiff's intellectual property.

93.     Defendants' injurious actions include all the misconduct described in the foregoing paragraphs, which are incorporated by reference herein, including but not limited to the development, deployment, maintenance, servicing, operation and other use of spyware, malware, and hacking devices to target, attack, exploit, interfere, and cause harm to Plaintiff's goodwill, property and reputation.

94.     These actions injured, harmed and caused damages to Plaintiff by forcing him to incur costs by spending money on personnel, resources, and time to identifying and investigating the attacks, interference, and exploits; attempting to deploy security patches and software upgrades; communicating with Microsoft, Apple, Google, Facebook, and other companies regarding such attacks, exploits, patches, and upgrades; increasing security measures to attempt to detect and prevent future attacks; purchasing new devices.

95.     Defendants force Plaintiff to engage in continual prevention and response efforts; even as Plaintiff employs solutions and enhances security of its devices, Defendants are constantly updating and adjusting their interference methods to overcome Plaintiff's security upgrades and other efforts.

96.     These constant recovery and prevention efforts require significant resources and impose significant cost on Plaintiff. Defendants' unlawful use of malware activities and other interference activities have caused and continue to cause Plaintiff significant damages in excess of $75,000 and in an amount to be proven at trial.

## COUNT I
## Violations of Computer Fraud and Abuse Act
## 18 U.S.C. § 1030(a)

97.     Plaintiff incorporates the foregoing by reference as if fully set forth herein.

98.     Plaintiff's devices are "computers" as defined by 18 U.S.C. § 1030(e)(1).

99.     Plaintiff's devices are "protected computers" as defined by 18 U.S.C. § 1030(e)(2)(B) because they are "used in or affecting interstate commerce or communication."

100.     Defendants violated and attempted to violate 18 U.S.C. § 1030(a)(2) because they intentionally accessed and attempted to access the Plaintiff's computers, and the operating systems of Plaintiff's computers, without authorization and obtained information and materials from Plaintiff's devices.

101.     Defendants violated 18 U.S.C. § 1030(a)(4) because they knowingly and with the intent to defraud accessed the operating system on Plaintiff's devices without authorization, using information from Plaintiff's devices to install highly invasive spyware on Plaintiff's devices, and by means of such conduct furthered the intended fraud and obtained something of value.

102.     Defendant access was without authorization because Plaintiff never consented to Defendants accessing his devices to install their spyware and/or use other means to monitor and/or control his devices.

103.     As a result of the fraud, Defendants obtained something of value, namely sensitive personal information, including text messages, emails, videos, images, browser data, account information, business materials, and other sensitive and valuable information and materials from Plaintiff's devices.

104.     Defendants' actions cause Plaintiff to incur a loss as defined by 18 U.S.C. § 1030(e)(11), in an amount in excess of $5,000 during a one-year period, including the expenditure of resources to investigate and remediate Defendants' conduct. Plaintiff is entitled to compensatory damages in an amount to be proven at trial, as well as injunction relief or other equitable relief. *See* 18 U.S.C. § 1030(g).

Damage to Plaintiff's Devices in Violation of 18 U.S.C. § 1030(a)(5)

105.     Plaintiff incorporates the foregoing by reference as if fully set forth herein.

106.     Defendants violated 18 U.S.C. § 1030(a)(5)(A) because they knowingly caused the transmission of a program, information, code, and/or command, specifically the commands needed to carry out the exploits and interference described above, to Plaintiff's devices, and as a result of such conduct, intentionally caused damage without authorization to Plaintiff's devices.

107.     Defendants violated 18 U.S.C. § 1030(a)(5)(B) because they intentionally accessed Plaintiff's devices without authorization and as a result of such conduct, recklessly caused damage to Plaintiff's devices.

108.     Defendants violated 18 U.S.C. § 1030(a)(5)(C) because they intentionally accessed Plaintiff's devices without authorization and as a result of such conduct, caused damage to Plaintiff's devices.

109.     Defendants violated 18 U.S.C. § 1030(b) by conspiring and attempting to commit the violations alleged in the preceding paragraphs.

110.     Defendants' actions cause Plaintiff to incur a loss as defined by 18 U.S.C. § 1030(e)(11), in an amount in excess of $5,000 during a one-year period, including the expenditure of resources to investigate and remediate Defendants' conduct. Plaintiff is entitled to compensatory damages in an amount to be proven at trial, as well as injunction relief or other equitable relief. *See* 18 U.S.C. § 1030(g).

## COUNT II
### Violations of the Stored Communications Act
### 18 U.S.C. §§ 2701, *et seq.*

111.     Plaintiff incorporates the foregoing by reference as if fully set forth herein.

112.     The Electronic Communications Privacy Act, 18 U.S.C. §§ 2510, *et seq.* (the "ECPA") broadly defines an electronic communication" as "any transfer of signs, signals, writing,

images, sounds, data or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce …" 18 U.S.C. §§ 2510(12). The Store Communications Act incorporates this definition.

113.    Pursuant to the ECPA and Stored Communications Act ("SCA"), "electronic storage" means any "temporary storage of a wire or electronic communication incidental to the electronic transmission thereof." 18 U.S.C. § 2510(17)(A). This type of electronic storage includes communications in intermediate electronic storage that have not yet been delivered to their intended recipient.

114.    The SCA mandates, among other things, that it is unlawful for a person to obtain access to stored communications on another's computer system without authorization. 18 U.S.C. § 2701.

115.    Congress expressly included provisions in the SCA to address this issue so as to prevent "unauthorized persons deliberately gaining access to, and sometimes tampering with, electronic or wire communications that are not intended to be available to the public." S. Rep. No. 99-541, 35, 1986 U.S.C.C.A.N. 3555, 3589.

116.    Defendants have violated 18 U.S.C. § 2701(a)(1) because they intentionally accessed Plaintiff's communications without authorization and obtained, altered, or prevented authorized access to a wire or electronic communication while in electronic storage by continuing to monitor and interfere with Plaintiff's devices. Defendants had actual knowledge of, and benefited from, this practice.

117.    Additionally, Defendants have violated 18 U.S.C. § 2701(a)(2) because they intentionally exceeded authorization to access Plaintiff's communications and obtained, altered, or prevented authorized access to a wire or electronic communication while in electronic storage

by continuing to monitor and interfere with Plaintiff's devices. Defendants had actual knowledge of, and benefited from, this practice.

118.     Defendants have also violated 18 U.S.C. § 2701(a)(2) because it intentionally exceeded authorization to access Plaintiff's communications and obtained, altered, or prevented authorized access to a wire or electronic communication while in electronic storage by accessing files on Plaintiff's local networks without permission.

119.     As a result of Defendants' conduct described herein and its violation of 18 U.S.C. § 2707, Plaintiff has suffered injuries to his privacy rights, and economic harm due to Defendants' unjust enrichment at his expense. Plaintiff seeks an order enjoining Defendants' conduct described herein and the maximum statutory and punitive damages available under 18 U.S.C. § 2707.

### COUNT III
### Violation of the Electronic Communications Privacy Act
### 18 U.S.C. §§ 2510, *et seq.*

120.     Plaintiff incorporates the foregoing by reference as if fully set forth herein.

121.     The Electronic Communications Privacy Act, 18 U.S.C. §§ 2510, *et seq.* (the "ECPA") broadly defined an "electronic communication" as "any transfer of signs, signals, writing, images, sounds, data, or intelligence or any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce …" 18 U.S.C. § 2510(12).

122.     The ECPA defines "electronic communications system" as any wire, radio, electromagnetic, photooptical or photoelectronic facilities for the transmission of wire or electronic communications, and any computer facilities or related electronic equipment for the electronic storage of such communications. 18 U.S.C. § 2510(14).

123.    The ECPA broadly defines the contents of a communication. Pursuant to the ECPA, "contents" of a communication, when used with respect to any wire, oral, or electronic communications, include any information concerning the substance, purport, or meaning of that communication. 18 U.S.C. § 2510(8). The definition thus includes all aspects of the communication itself. The privacy of communication to be protected is intended to be comprehensive.

124.    Plaintiff's personal computers and computer networks constitute "electronic computer systems." Plaintiff transmits "electronic communications" by and through his computers and computer networks in the form of, among others, emails, texts, sending requests to visit websites, online chats, file transfers, file uploads, and file downloads.

125.    Defendants conduct violated 18 U.S.C. § 2511(1)(a) because they intentionally intercepted and endeavored to intercept Plaintiff's electronic communications to, form, and within his computers and computer networks.

126.    Defendants conduct violated 18 U.S.C. § 2511(1)(d) because they used and endeavored to use the contents of Plaintiff's electronic communications to profit from their unauthorized collection and sale, knowing and having reason to know that the information was obtained through interception in violation of 18 U.S.C. § 2511(1).

127.    Defendants intentionally obtained and/or intercepted, by device or otherwise, these electronic communications, without the knowledge, consent or authorization of Plaintiff.

**COUNT IV**
**Misappropriation of Trade Secrets**
**18 U.S.C. § 1836**

128.    Plaintiff incorporates the foregoing by reference as if fully set forth herein.

129.     Plaintiff's confidential information includes trade secrets and/or other proprietary information that derives independent economic value from not bring known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

130.     Plaintiff's confidential and trade secret information has been and continues to be the subject of Plaintiff's reasonable means and measures to keep such information secret.

131.     Defendants misappropriated such confidential and trade secret information of Plaintiff after obtaining it through improper means as alleged herein.

132.     As a result of Defendants misappropriation, Plaintiff has been and continues to be damaged and irreparably injured, including without limitation, the loss of sales and profits it would have earned by for Defendants' actions, and damages to Plaintiff's reputation among potential and existing students, customers, business partners, investors, schools, colleges, universities and in the industry in general.

133.     Defendants' misappropriation is willful and malicious and thereby entitles Plaintiff to an award of exemplary damages.

134.     Additionally, Defendants' misappropriation of Plaintiff's confidential and trade secret information has caused and will continue to cause Plaintiff irreparable and substantial injury and therefore cannot be fully redressed through damages alone. An injunction prohibiting Defendants from further use or disclosure of Plaintiff's confidential and trade secret information is necessary to provide Plaintiff with complete relief.

**<u>COUNT V</u>**
**Misappropriation of Trade Secrets**
**Kansas Uniform Trade Secrets Act—K.S.A. §§ 60-3320, *et seq.***

135.     Plaintiff incorporates the foregoing by reference as if fully set forth herein.

136.    Plaintiff's confidential information includes trade secrets and/or other proprietary information that derives independent economic value, actual or potential, from not being general known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

137.    Plaintiff's confidential and trade secret information was and continues to be the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

138.    Defendants misappropriated Plaintiff's confidential and trade secret information after obtaining it through improper means as alleged herein.

139.    As a result of Defendants misappropriation, Plaintiff has been and continues to be damaged and irreparably injured, including without limitation, the loss of sales and profits it would have earned by for Defendants' actions, and damages to Plaintiff's reputation among potential and existing students, customers, business partners, investors, schools, colleges, universities and in the industry in general.

140.    Defendants' misappropriation is willful and malicious and thereby entitles Plaintiff to an award of exemplary damages.

141.    Additionally, Defendants' misappropriation of Plaintiff's confidential and trade secret information has caused and will continue to cause Plaintiff irreparable and substantial injury and therefore cannot be fully redressed through damages alone. An injunction prohibiting Defendants from further use or disclosure of Plaintiff's confidential and trade secret information is necessary to provide Plaintiff with complete relief.

### COUNT VI
### Breach of Contract

142.    Plaintiff incorporates the foregoing by reference as if fully set forth herein.

143.   A contracted existed between Plaintiff, Defendant Talentum, and Defendant Liang, as described herein, which has sufficient consideration to support it.

144.   Plaintiff performed in compliance with said contract.

145.   Defendant Talentum and Defendant Liang breached their obligations and duties under the contract as described herein.

146.   As a direct result of said breaches, Plaintiff has been damaged in the amount of $108,000 (prorated), the fair market value of 20% ownership interest in all of Defendant Liang's businesses, and his legal fees and expenses.

**COUNT VII**
**Promissory Estoppel**

147.   Plaintiff incorporates the foregoing by reference as if fully set forth herein.

148.   Plaintiff reasonably expected Defendant Talentum and Defendant Liang to act in reliance on the promise he would be paid a salary and transferred ownership interests in Defendant all of Defendant Liang's businesses.

149.   Because of Plaintiff's reasonable expectation that Defendant Talentum and Defendant would act in accordance with the promise to pay Plaintiff a salary and transfer ownership interests in all of Defendant Liang's businesses, Plaintiff, reasonably so acted by engaging in the duties, obligations and responsibilities as president of Defendant Talentum.

150.   Plaintiff was never paid and never received any ownership interest in any of Defendant Liang's businesses, but provided substantial value as president of Defendant Talentum, including expending his own money, and a refusal to enforce this promise would countenance a substantial injustice.

151.   As a direct result of Defendants refusal to act in accordance with the promise and Plaintiff reliance on that promise, Plaintiff has been damaged in the amount of $108,000 (prorated),

the fair market value of 20% ownership interest in all of Defendant Liang's businesses, and his legal fees and expenses.

## COUNT VIII
### Tortious Interference

152.    Plaintiff incorporates the foregoing by reference as if fully set forth herein.

153.    Plaintiff, through the creation and furtherance of Eastwested, had a business relationship and/or expectancy with probable future economic benefit to Plaintiff.

154.    Defendants had knowledge of the relationships and/or expectancy, as Defendants were interfering and monitoring Plaintiff's devices.

155.    But for Defendants conduct, as described herein, Plaintiff was reasonably certain to have continued the relationships and/or realized the expectancy.

156.    Defendants engaged in intentional misconduct, as described herein, and had the specific intent to harm and/or injure Plaintiff and his business.

157.    As a result of Defendants conduct, Plaintiff sustained, and continues to sustain, direct and proximate damages in an amount to be proven at trial.

## COUNT IX
### Invasion of Privacy

158.    Plaintiff incorporates the foregoing by reference as if fully set forth herein.

159.    Defendants conduct as described above, intentionally intruded upon the solitude and/or seclusion of Plaintiff by the following, which is not exclusive:

    a.    Interfering with and/or monitoring Plaintiff's communication, including but not limited to text messages, emails, social media messages, WhatsApp;

    b.   Interfering with and/or monitoring Plaintiff's private electronic devices, including monitoring his internet browser activity, application activity, phone calls, FaceTimes, social media activity, as well as other activities and communications;

    c.   Interfering with and/or monitoring Plaintiff's use of his devices videos and cameras;

160.    Defendant intentional intrusion was into the private affairs and/or concern of Plaintiff.

161.    Defendants' intentional intrusion would be highly offensive to an ordinary person.

162.    As a direct and proximate result of Defendants conduct set forth above, Plaintiff has not been able to adequately function or communicate and has had to alienate himself in fear that communicating with others could subject them to the same interference and/or monitoring.

163.    Defendants' actions were/are intentional and with reckless disregard or complete indifference to the probable consequences of the act.

164.    As a direct and proximate result of Defendants' conduct Plaintiff has suffered emotional distress which is extreme and severe and causally connected to the Defendants' intentional and outrageous conduct.

## COUNT X
### Unjust Enrichment

165.    Plaintiff incorporates the foregoing by reference as if fully set forth herein.

166.    By working as the president of Defendant Talentum, and engaging the duties, obligations and responsibilities of the president, a benefit was conferred upon Defendant Talentum by Plaintiff.

167.    Defendant Talentum appreciated and/or knew of the benefit conferred upon it by Plaintiff.

168.     Defendant Talentum's acceptance and/or retention of the benefit under the circumstances described herein make it inequitable for Defendant Talentum to retain the benefit without payment of its value.

169.     Plaintiff was never paid and never received any ownership interest in any of Defendant Liang's businesses, but provided substantial value as president of Defendant Talentum, including expending his own money, and it would be inequitable for Defendant Talentum and Defendant Liang to retain such benefit without payment to Plaintiff.

170.     As a direct result of Defendants actions, Plaintiff has been damaged in the amount of $108,000 (prorated), the fair market value of 20% ownership interest in all of Defendant Liang's businesses, and his legal fees and expenses

## COUNT XI
## Conspiracy

171.     Plaintiff incorporates the foregoing by reference as if fully set forth herein.

172.     Defendants, collectively, are two or more persons.

173.     Defendants object to accomplished was to harass and intimidate Plaintiff and to misappropriate and profit off his confidential and trade secret information.

174.     Defendants had a meeting of the minds to accomplish their object.

175.     The conduct set forth herein clearly shows Defendants engaged in one or more unlawful overt acts toward their object.

176.     Plaintiff has been proximately damaged.

177.     As a direct and proximate result of Defendants' conduct set forth above Plaintiff has not been, and continues to not be able to adequately function or communicate and has had to alienate himself in fear that communicating with others could subject them to the same interference and/or monitoring.

178.   Defendants' actions were intentional and with reckless disregard or complete indifference to the probable consequences of the act.

179.   As a direct and proximate result of Defendants' conduct Plaintiff suffered emotional distress which is extreme and severe and causally connected to the Defendants' intentional and outrageous conduct.

## PRAY FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

A.   Judgment entered against Defendants, jointly and severally, for (1) Violations of Computer Fraud and Abuse Act (18 U.S.C. § 1030(a)); (2) Violations of the Stored Communications Act (18 U.S.C. §§ 2701, *et seq.*); (3) Violation of the Electronic Communications Privacy Act (18 U.S.C. §§ 2510, *et seq.*); (4) Misappropriation of Trade Secrets (18 U.S.C. § 1836); (5) Misappropriation of Trade Secrets (Kansas Uniform Trade Secrets Act—K.S.A. §§ 60-3320, *et seq.*); (6) Breach of Contract; (7) Promissory Estoppel; (8) Tortious Interference; (9) Invasion of Privacy; (10) Unjust Enrichment; and (11) Conspiracy;

B.   Award injunctive and other equitable relief as is necessary to protect the interest of Plaintiff, including, *inter alia*, (i) an order prohibiting Defendants from engaging in the wrongful and unlawful acts described herein; (ii) requiring Defendants to refrain from accessing Plaintiff's communications, files and materials, and all Plaintiff's accounts—including without limitation, email accounts, social media accounts, bank accounts, professional accounts, Microsoft accounts, Google accounts, Apple accounts, etc.; (iii) requiring Defendants to refrain from accessing Plaintiff's devices and the devices of Plaintiff's family and friends; (iv) requiring Defendants to return to Plaintiff everything obtained by the development, deployment, maintenance, servicing, operation and other use of spyware, malware, and other hacking devices; (v) requiring Defendants

to uninstall any and all spyware, malware, and other hacking devices designed to target, attack, exploit, interfere, and cause harm to Plaintiff's goodwill, property and reputation;

C.      Award damages, including statutory damages under 18 U.S.C. § 1030, 18 U.S.C. § 2707, and any other statutory damages as alleged herein as well as punitive damages, where applicable, to Plaintiff in an amount to be determined at trial;

D.      Award Plaintiff his reasonable litigation expenses and attorneys' fees;

E.      Award Plaintiff pre- and post-judgment interest, to the extent allowable; and

F.      Award such other and further relief as the Court deems proper and just.

## JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

**WEBSTER LAW, LLC**

/s/ Spencer J. Webster
Spencer J. Webster,    MO # 78795
swebster@sjwebsterlaw.com
700 West 47th Street, Suite 550
Kansas City, Missouri 64112
(816) 384-2272

**ATTORNEY FOR PLAINTIFF**