IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| BRETT HUEFFMEIER,<br><br>      Plaintiff,<br><br>      v.<br><br>TALENTUM EMPOWERMENT INSTITUTE, LLC, et al.,<br><br>      Defendants. | Case No. 22-CV-2333-JAR-ADM |

## MEMORANDUM AND ORDER

Plaintiff Brett Hueffmeier filed suit against six Defendants on August 22, 2022, asserting eleven different claims. Defendants include Talentum Empowerment Institute, LLC ("Talentum"); KnowledgeLink Group, Inc. ("KL"); and individual Defendants Yi "Barbara" Liang, Vivian Nieh, Sandra Nieh, and Xinwei "Christine" Lin. Defendants KL and Lin have now filed a Motion to Dismiss (Doc. 47). Both Defendants assert that Plaintiff fails to state a claim against them. Defendant Lin also requests dismissal because she claims Plaintiff failed to properly serve her. The motion is fully briefed, and the Court is prepared to rule. For the reasons set forth below, the Court grants Defendants' motion.

**I.    Factual and Procedural Background**

Plaintiff's Complaint broadly alleges that just before and immediately after he separated from his employment from Talentum, Defendants engaged in an organized effort to access and infiltrate his electronic devices, email accounts, social media accounts, and bank accounts to harass him and steal his business and personal information for their own gain.

He claims that in June 2018, he took a job in China with KL and continued working for KL for two years. KL partners with schools in the United States to provide international students

opportunities in obtaining a United States education.  Plaintiff became the number three person at KL with the title of Regional Dean of Schools.  Plaintiff's direct supervisor was Liang.

In or around June 2020, Liang informed Plaintiff that she was leaving KL to start her own company doing similar work as KL.  Liang offered Plaintiff a position with her new companies, Talentum, ABC Education Group, and International Education Alliance for Learning.  In or about January 2021, Plaintiff accepted the position, moved to Kansas, and began working for Talentum.  Liang offered Plaintiff either ownership in Liang's companies or a salary.  After approximately four months of working for Liang, Plaintiff opted for the ownership interest.

While Plaintiff worked at Talentum, he had an idea for a program.  Initially, Liang was supportive of the idea.  Over time, Liang changed her mind and began discouraging Plaintiff from developing the idea.  Liang wanted Plaintiff to exclusively focus on her core business model.  Liang, however, did tell Plaintiff that he could pursue the idea on his own time.  Plaintiff housed his materials on his own Microsoft Office 365 tenant and communicated with employees at KL, telling them they were not to access his private tenant.

In May 2021, Plaintiff had yet not been compensated and he told Liang that he would rather receive salary than ownership interest.  Liang told Plaintiff that she would pay him salary and give him ownership interest and that a contract was in the works.  Eventually, Liang told Plaintiff that she did not believe Talentum would get any enrollment and would not make a profit.  Thus, Plaintiff would not receive his salary.  Liang instead offered Plaintiff $5,000, but to receive the $5,000, Plaintiff had to sign an agreement sharing ownership of his intellectual property with Liang.

Plaintiff rejected Liang's offer, retained an attorney, and prepared to file suit to protect his intellectual property.  Prior to filing a lawsuit, Plaintiff decided to move on, but his materials

2

were in the same Office 365 account with Talentum's materials. Although there was one 365 account, there were two domains. One domain was associated with Liang and one domain was associated with Plaintiff.

In June 2021, before a separation of the domains could occur, Talentum removed Plaintiff as administrator and sent Plaintiff an email that they intended to delete his domain and all the materials. Plaintiff requested that it not do so. On July 2, 2021, Plaintiff received an email with Malware, and forwarded the email to his attorney. Plaintiff's computer and other devices were infected with Malware.

In September 2021, Talentum and Plaintiff agreed to separate the two tenants on Office 365. Plaintiff began incorporating his new company. In late September 2021, Plaintiff noticed overt intrusions, identity theft, and intellectual property theft. Plaintiff claims that Sandra Nieh, Talentum's IT guru, obtained complete control of his platform. In addition, Plaintiff asserts that his phones and iPad were illegally accessed by Sandra and Vivian Nieh.

Plaintiff sent an email to Talentum's leadership team (Liang and the Niehs) telling them that the interference needed to stop. Plaintiff attempted to regain control over his devices, several times, and was unable to do so. He lost control of his email, Microsoft, iCloud, WhatsApp, and Facebook accounts. His bank accounts were also compromised and have had fraudulent activity.

Plaintiff claims that upon information and belief, Talentum, KL, Liang, and Lin were working together to steal Plaintiff's intellectual property and interfere with his business plan and relationships. He includes the following claims: (1) violations of Computer Fraud and Abuse Act; (2) violations of the Stored Communications Act; (3) violation of the Electronic Communications Privacy Act; (4) misappropriation of trade secrets; (5) misappropriation of

3

trade secrets, Kansas Uniform Trade Secrets Act; (6) breach of contract; (7) promissory estoppel; (8) tortious interference; (9) invasion of privacy; (10) unjust enrichment; and (11) conspiracy. He was represented by counsel, Spencer J. Webster.

In January 2023, the Court issued a Show Cause Order directing Plaintiff to demonstrate why the case should not be dismissed because Defendants had not yet been served with a summons and a copy of the complaint. After communication from Plaintiff in which he stated that he had been unsuccessful in reaching his counsel for months, the Court issued a second Show Cause Order in March 2023. In that Order, the Court directed Plaintiff to serve Defendants by May 26, 2023. In addition, the Court ordered Plaintiff to file a notice regarding the status of his legal representation.

On May 26, Plaintiff filed Proofs of Service ("Alias Summons Returned Executed") for all Defendants. He indicated that Defendants Talentum, Liang, Vivian Nieh, and Sandra Nieh were served via Pinnacle Solutions Consulting, LLC. He stated that Defendants KL and Lin were served at 101 Federal Street in Boston, Massachusetts through Mrs. Posada. On May 30, Plaintiff filed a Notice clarifying the status of his legal representation stating that he was still unsuccessful in reaching his attorney of record.

On June 13, Judge Angel D. Mitchell held a Show Cause hearing regarding Plaintiff's counsel's status. Plaintiff and his counsel appeared, and Judge Mitchell determined that Plaintiff would like to proceed with his counsel of record, and his counsel agreed. Judge Mitchell also noted that she intended to refer concerns about Plaintiff's counsel's previous unresponsiveness to the Kansas Disciplinary Administrator.

On June 15, 2023, three Defendants (Liang and the Niehs) filed a Motion to Strike for Insufficient Service. They claimed that they were not served properly. Plaintiff argued that he

substantially complied with serving these Defendants.  The Court disagreed with Plaintiff and found that service was insufficient.  Thus, the Court struck the proofs of service and directed Plaintiff to properly serve these three individual Defendants by September 8, 2023.[1]  The docket indicates that summons were issued on September 8, but as of October 16, there is nothing on the docket indicating that Liang and the Niehs were served.

On August 14, Defendants KL and Lin filed their motion to dismiss.  Defendant Lin asserts that Plaintiff failed to properly serve her.  Both Defendants assert that Plaintiff fails to state a claim against them.

## II.     Motion to Dismiss for Insufficient Service of Process

Federal Rule of Civil Procedure 12(b)(5) governs motions to dismiss for insufficient service of process.  Plaintiff must validly serve process on a defendant under Fed. R. Civ. P. 4 before the Court can exercise personal jurisdiction.[2]  "Plaintiff bears the burden to prove valid service."[3]  In ruling on a Rule 12(b)(5) motion to dismiss, "[t]he parties may submit affidavits and other documentary evidence for the Court's consideration, and plaintiff is entitled to the benefit of any factual doubt."[4]

In this case, Plaintiff filed a Proof of Service stating that Lin was served through Mrs. Posada, reception[ist] of Regus Office, at 101 Federal Street, Suite 1900, Boston MA 02110.  Lin submits an affidavit in which she asserts that she was not personally served at her residence and that Mrs. Posada is not her authorized agent.  Thus, Lin contends that service was insufficient.

---

[1] Doc. 49.

[2] *Wanjiku v. Johnson County*, 173 F. Supp. 3d 1217, 1223 (D. Kan. 2016) (citations omitted).

[3] *Id.* (citing *Oltremari ex rel. McDaniel v. Kan. Soc. & Rehab. Serv.*, 871 F. Supp. 1331, 1349 (D. Kan. 1994)).

[4] *Fisher v. Lynch*, 531 F. Supp. 2d 1253, 1260 (D. Kan. 2008) (citation omitted).

Under Rule 4(e)(1), an individual can be served by following state law for either the state where the district court is located, or the state where service is made. Alternatively, the plaintiff can follow Rule 4(e)(2) by:

> (A) delivering a copy of the summons and of the complaint to the individual personally;
>
> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>
> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.[5]

Plaintiff's service on Lin did not comply with Rule 4(e)(2) because she was not served personally, nor left a copy of the summons and Complaint at her dwelling or usual place of abode, nor delivered the summons and Complaint to an authorized agent.

Plaintiff also did not comply with Rule 4(e)(1) because he did not follow Kansas law.[6] K.S.A. § 60-304(a) requires Defendant to first be served at her "place of abode," and for Plaintiff to "file[] a return of service stating that the return receipt delivery to the individual at the individual's . . . place of abode was refused or unclaimed." There is no evidence that Plaintiff tried to serve Lin at her dwelling, and Plaintiff did not file a return showing that such service was refused. Therefore, Plaintiff did not comply with Kansas law.

Plaintiff, however, asserts that he substantially complied with Kansas law by serving Lin at her place of employment by a process server. Under Kansas law, the Court can find substantial compliance if "the party served was made aware that an action or proceeding was

---

[5] Fed. R. Civ. P. 4(e)(2).

[6] Fed. R. Civ. P. 4(e)(1) also provides that a person may be served by following state law where service is made. Plaintiff does not address Massachusetts law, and thus the Court will not consider whether service complied with Massachusetts law. The Court will only address service under Kansas law.

6

pending in a specified court that might affect the party or the party's status or property."[7]  Kansas case law defines substantial compliance as "compliance in respect to the essential matters necessary to assure every reasonable objective of the statute."[8]

Plaintiff did not follow the first two prerequisites for service by mail under Kansas law—attempting residential service and filing a return indicating that residential service was refused or unclaimed.  Skipping the first two requirements of the statute fails to satisfy the statute's reasonable objectives.[9]  "If the Kansas legislature had intended to allow plaintiffs to serve defendants by mail at their business addresses without meeting the other statutory prerequisites for such service, it would not have included the restrictions for business address service in the statute."[10]  In addition, Plaintiff did not serve Lin at her purported place of business by return receipt delivery but instead attempted service through a process server.  Thus, the Court finds that Plaintiff did not substantially comply with the statute's requirements.

Furthermore, the fact that Lin was made aware of this lawsuit, and therefore appeared and defended, does not, standing alone, mean that Plaintiff substantially complied.  To find substantial compliance, Lin's knowledge about this lawsuit must have come from Plaintiff's incorrect service attempt.[11]  There is no evidence that Lin learned of the lawsuit from Plaintiff's efforts.  Because service of process was not properly accomplished under K.S.A. § 60-304, and

---

[7] K.S.A. § 60-204.

[8] *Fisher v. DeCarvalho*, 314 P.3d 214, 219 (Kan. 2013) (quoting *Myers v. Bd. of Cnty. Comm'rs of Jackson Cnty.*, 127 P.3d 319, 323 (Kan. 2006)).

[9] *Wanjiku v. Johnson County*, 173 F. Supp. 3d 1217, 1231 (D. Kan. 2016) (citing *Settle v. Diversified Consultants Inc.*, No. 13-2606-EFM-GL, 2014 WL 1607589, at *3 (D. Kan. Apr. 22, 2014)).

[10] *Id.* at 1230.

[11] *Id.*; *see also Taylor v. Target Distrib.*, No. 21-4016-EFM, 2022 WL 444109, at *3 (D. Kan. Feb. 14, 2022) ("[A] defendant's independent acquisition of actual knowledge of the suit is not determinative.").

Plaintiff cannot demonstrate substantial compliance under K.S.A. § 60-204, Plaintiff cannot make a prima facie case of valid service on Lin.

Plaintiff requests that if the Court finds that he failed to properly serve Lin, the Court allow him additional time to serve her. Fed. R. Civ. P. 4(m) provides:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

"[T]he good cause requirement of Rule 4(m) 'should be read narrowly to protect only those plaintiffs who have been meticulous in their efforts to comply with the Rule.'"[12] Good cause requires more than excusable neglect.[13] "Simple inadvertence or ignorance of the rules does not suffice."[14]

The Court declines to exercise its discretion to extend the time for Plaintiff to correctly serve Lin because it cannot find good cause for the failure to appropriately serve her. Plaintiff filed suit on August 22, 2022—approximately fourteen months ago. In January and March 2023, the Court issued show cause orders as to why the case should not be dismissed because Defendants had not yet been served. The March Order directed Plaintiff to serve Defendants by May 26, 2023. And although Plaintiff filed six proofs of service on May 26, the Court has now found that four Defendants' service was insufficient and improper.

---

[12] *Joe Hand Promotions, Inc. v. 3rd Generation, Inc.*, No. 22-1069-TC-RES, 2022 WL 3213118, at *2 (D. Kan. July 15, 2022) (quoting *Despain v. Salt Lake Area Metro Gang Unit*, 13 F.3d 1436, 1438 (10th Cir. 1994)).

[13] *Arey v. Progressive Halcyon Ins. Corp.*, No. 05-2553-JWL, 2007 WL 1018798, at *2 (D. Kan. Apr. 3, 2007) (citations omitted).

[14] *Id.* (citations omitted).

The Court recognizes that Plaintiff presumably acted on his own behalf when serving Defendants in May because he was unable to reach his counsel of record. Plaintiff and his counsel, however, appeared before Judge Mitchell on June 13, 2023, stating that Plaintiff wanted to proceed with his counsel despite the issues. Plaintiff's counsel presumably responded to the previous motion filed by Liang and the Niehs in which Defendants sought to strike insufficient service of process against them.[15]

In the Court's August 15 Order striking those returns of service, the Court set forth the requirements for valid service of process under Kansas law. And the Court set forth why Plaintiff failed to properly serve those three Defendants and failed to substantially comply with Kansas law. Thus, the requirements for proper service and substantial compliance were clearly set out.

In Plaintiff's response to Lin's current motion to dismiss for ineffective service of process, he continues to assert that he substantially complied with the statute despite the Court previously rejecting that same argument. In addition, even though the Court ordered Plaintiff in the August 15 Order to properly serve Defendants Liang and the Niehs by September 8, 2023, Plaintiff failed to do so. As of October 16, 2023, there is no indication that Defendants Liang and the Niehs have been served.[16] The Court has no confidence that extending the deadline for Plaintiff to serve Defendant Lin will result in effective service, and Plaintiff fails to demonstrate good cause for the failure to appropriately serve her almost fourteen months after the lawsuit was filed. Thus, the Court will not extend the time for service on Lin.

---

[15] Doc. 41.

[16] Although there is a docket entry on September 8, 2023 that a summons was issued for these three Defendants, nothing else regarding service has been filed on the docket.

9

Finally, even if Plaintiff could perfect service, the claims would be subject to dismissal under Rule 12(b)(6) for the reasons described below.[17]

### III. Motion to Dismiss for Failure to State a Claim

To survive a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[18] The plausibility standard does not require a showing of probability that a defendant has acted unlawfully, but it requires more than "a sheer possibility."[19] "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[20] Finally, the Court must accept the plaintiff's factual allegations as true, view those facts in the light most favorable to the plaintiff, and assess whether they give rise to a reasonable inference that the defendant is liable in light of the applicable law.[21]

The Supreme Court has explained the analysis as a two-step process. For the purposes of a motion to dismiss, the court "must take all of the factual allegations in the complaint as true, [but] we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[22] Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[23] Second, the

---

[17] *See Wanjiku*, 173 F. Supp. 3d at 1232 (declining to extend time for service where the complaint was subject to dismissal under Rule 12(b)(6)); *Wilkins v. Chrisman*, 665 F. App'x 681, 684 (10th Cir. 2016) (affirming district court's dismissal for failure to state claim, even though it also found insufficient service).

[18] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[19] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[20] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[21] *See Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016).

[22] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

[23] *Id.* at 678−79.

court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[24] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[25]

Defendants argue that Plaintiff fails to provide adequate allegations to support any claim against them. Plaintiff asserts eleven claims, but three of them are specific to Defendants Talentum and Liang. Thus, only eight claims may be related to Defendants KL and Lin.

With regard to Lin, Plaintiff's 29-page Complaint only names her two times. He alleges that she is a resident of Boston, Massachusetts. And he alleges that "[u]pon information and belief, Defendant Talentum, Defendant KL, Defendant Liang, and Defendant Lin were/are working together to steal Plaintiff's intellectual property, execute his business plan and interfere with his relationships."[26] Plaintiff includes examples of interference, such as offering 24-hour tutoring services, creating the same international university, and stealing Plaintiff's curriculum. Yet, Plaintiff does not specifically reference Defendant Lin in any of those allegations.[27]

As to KL, Plaintiff only includes a few more allegations. Plaintiff alleges that he worked for KL for two years in China beginning in 2018. However, Plaintiff alleges that he left KL in January 2021 and began working for Talentum. Plaintiff's only specific allegation relating to KL is the same as the allegation against Lin that "[u]pon information and belief," KL worked with Talentum, Liang, and Lin to steal his intellectual property and interfere with his

---

[24] *Id.* at 679.

[25] *Id.* at 678.

[26] Doc. 1 at 15–16, ¶ 91.

[27] Plaintiff primarily specifically references Talentum in this paragraph of allegations.

relationships. He specifically alleges that KL created the same international university that Plaintiff had created while working at Talentum.[28]

Plaintiff claims that he has alleged sufficient facts to meet the liberal notice pleading requirements. He contends that the crux of his claim against KL and Lin is that they possess proprietary information that could have only been obtained improperly. Yet, he fails to include any specific factual allegations regarding KL or Lin obtaining proprietary information. As Defendants point out, the factual basis for Plaintiff's eight claims against KL and Lin relies on one paragraph in which he states that they worked together to steal his property, execute his business plan, and interfere with his relationships. This lone factual allegation does not suggest a plausible claim against KL or Lin. In addition, in Plaintiff's specific causes of action, he does not specifically identify KL or Lin but only broadly alleges "Defendants." Plaintiff's factual allegations provides no specificity as to Lin's or KL's actions in this case. Accordingly, Plaintiff fails to state a claim against Defendants KL and Lin.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion to Dismiss (Doc. 47) is **granted**.

**IT IS SO ORDERED.**

Dated: October 17, 2023

                                                      S/ Julie A. Robinson
                                                      JULIE A. ROBINSON
                                                      UNITED STATES DISTRICT JUDGE

---

[28] Plaintiff also alleges that he communicated with employees at KL telling them to not access his private tenant. This allegation does not relate to any actions taken by KL but instead relates to Plaintiff's actions. In addition, Plaintiff alleges that unnamed perpetrators used Plaintiff's email, Facebook, and website domains to redirect business inquiries to KL and Talentum. Again, this allegation is not specific to any action taken by KL.